UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gregory Kleynerman,                           Case No. 18-26659-beh

                Debtor.                        Chapter 7

Scott Smith,

                Plaintiff,

v.                                                  Adversary No. 18-02220

Gregory Kleynerman,

                Defendant.

**PRE TRIAL DECISION**

      Defendant/Debtor Gregory Kleynerman filed a Chapter 7 bankruptcy petition on July 9, 2018. Among the debts he listed on his schedules was a $499,000 debt to Scott Smith arising from a Milwaukee County Circuit Court judgment. In the trial of that case, the jury was presented with claims of rescission based on mental incompetence, intentional misrepresentation and breach of fiduciary duty. The jury was asked to award compensatory and punitive damages. The jury also considered a counterclaim of misrepresentation against Smith. Ultimately it found Smith was not mentally incompetent at the relevant time, that three of six asserted representations were made, but were not untrue, that Kleynerman had and breached a fiduciary duty to act in furtherance of Smith's interest, in the amount of $499,000, and that Smith was negligent in making a misrepresentation but it caused no monetary damage. Kleynerman appealed the breach of fiduciary duty finding and Smith cross-appealed the no intentional misrepresentation finding, but both were affirmed. *Smith v. Kleynerman,* 2016 WI App 57, 370 Wis.2d 786, 882 N.W.2d 870, 2016 WL 3308940 (per curiam) (unpublished).

On October 9, 2018, Smith filed the current adversary case against Kleynerman, asking this Court to determine that the Judgment against Kleynerman in the amount of $499,000 plus interest is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), because Kleynerman's judgment debt to Smith is one for money based upon a breach of fiduciary duty and excepted from discharge as a result of fraud or defalcation while acting in a fiduciary capacity. Before asking that the complaint be dismissed in its entirety, Kleynerman's answer set forth three affirmative defenses: (1) issue preclusion as to misrepresentation or fraud; (2) issue preclusion as to mental competence; and (3) no fiduciary capacity for purposes of section 523(a)(4).

On February 21, 2019, Kleynerman filed two Motions *in Limine*, asking the Court to bar evidence regarding Smith's mental competence and to bar evidence of Kleynerman's alleged misrepresentations. The Court thereafter issued an amended scheduling order requiring Smith's response to the Motions *in Limine* to be filed by March 1, 2019 and extending the deadline for the pretrial report to March 13, 2019. The March 14 pretrial conference date and the March 18 trial date did not change. This constitutes the Court's decision on the two Motions *in Limine*.

Kleynerman's Motions *in Limine* are based on the doctrine of issue preclusion a/k/a collateral estoppel. That is, Kleynerman argues that the issue of Smith's mental competence was fully litigated in a five-day state court trial in 2014, and a jury specifically found that Smith was not incompetent when he signed documents between March and June 2009. Kleynerman further argues that Smith is estopped from re-litigating the issue of whether Kleynerman made any intentional misrepresentations in connection with the 2009 transaction at issue.

The doctrine of issue preclusion bars relitigation of issues determined in prior court actions and applies to discharge exception proceedings under 11 U.S.C. section 523(a). *Gambino v. Koonce*, 757 F.3d 604, 608, citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Smith and Kleynerman both state in their memoranda that issue preclusion hinges on four elements: (1) the issue

sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and, (4) the party against whom estoppel is invoked must be fully represented in the prior action. But they rely on cases where the underlying litigation occurred in a federal court. *See, e.g., Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chgo.*, 649 F.3d 539 (7th Cir. 2011) and *Meyer v. Rigdon,* 36 F.3d 1375 (7th Cir. 1994).

That is not the situation here. Smith obtained a judgment against Kleynerman in Milwaukee County Circuit Court, so this Court must apply the Wisconsin law of issue preclusion, which is a slightly different formulation than the federal version. *In re Larsen*, 422 B.R. 913, 920 (Bankr. E.D. Wis. 2010) (to determine preclusive effect in subsequent nondischargeability proceeding of previous Wisconsin state court judgment, bankruptcy court had to apply Wisconsin law of issue preclusion); *In re Pulvermacher*, 567 B.R. 881, 889 (Bankr. W.D. Wis. 2017) ("Wisconsin law on issue preclusion forecloses relitigation in a subsequent action of an issue of law or fact if two elements are present: (1) whether the issue was actually litigated in a prior action and was necessary to the judgment, and (2) whether the application of issue preclusion would be fundamentally unfair") citing *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772-73 (7th Cir. 2013).

The $499,000 judgment was awarded after a jury trial in Milwaukee County Circuit Court. As explained by the Court of Appeals when it affirmed the judgment, following Kleynerman's appeal of the judgment as to breach of fiduciary duty, and Smith's cross-appeal as to the intentional misrepresentation claim:

> This case arises from a June 2009 transaction involving the sale of all valuable assets, including patents and related materials, owned by Alpha Cargo Technology, LLC to Red Flag Cargo Security Systems, LLC. Greg Kleynerman and Scott Smith each own fifty percent of ACT. In December 2011, Smith initiated this action against Kleynerman and Red Flag, claiming, among other things, that: (1) Kleynerman breached his fiduciary duty owed to Smith with respect to the Red Flag transaction; and (2) Kleynerman intentionally made material misrepresentations to Smith that caused Smith to suffer pecuniary damages.

A jury found against Kleynerman as to the breach of fiduciary duty claim and awarded Smith $499,000 in compensatory damages. The jury found in favor of Kleynerman as to the intentional misrepresentation claim, but the jury awarded Smith punitive damages in response to the related punitive damages question: "How much should Smith receive from Kleynerman as punitive damages for Kleynerman's intentional misrepresentation(s)?" The circuit court accepted the jury's verdict. The parties filed cross post-verdict motions. The circuit court found that the jury's award of punitive damages was legally inconsistent with the jury's verdict that the representations were *not* untrue and, therefore, struck the punitive damages award.

The Special Verdict Form, which Kleynerman included with his Motion *in Limine*, included the following:

**I.    Rescission Based Upon Mental Incompetence**

Question 1:
When signing the documents that made up the Transaction (the Memorandum of Understanding, the Asset Sale Agreement, the Sales Representative Agreement), was Smith mentally incompetent?

                                                                                                                Answer: NO

If you answered Question 1 "yes" then answer Question 2. If you answered Question 1 "no," then go to Question 4.

Question 2:
Did Red Flag representatives have knowledge, or were they on notice, of Smith's mental incompetence prior to or on June 5, 2009, the date of the transaction between ACT and Red Flag Cargo Security Systems, LLC a/k/a Alpha Cargo Technology Marketing, LLC?

                                                                                                                Answer: _____

If you answered Question 2 "yes" then answer Question 3. If you answered Question 2 "no." then go to Question 4.

Question 3:
If you find that Smith lacked mental competence, Is ACT entitled to rescission of the contracts making up the Transaction between ACT and Red Flag Cargo Security Systems LLC a/k/a Alpha Cargo Technology Marketing, LLC?

                                                                                                                Answer: _____

Proceed to Question 4.

**II.    Misrepresentation – Intentional**

Question 4:
Did Kleynerman make any of the following representations related to the Transaction to Smith prior to the execution of contracts:

Place a check mark next to all representations that were made:
__√__ Glaser and Grinburg would invest at least $250,000 in ACT
_____ ACT, not Red Flag, would open a manufacturing and distribution facility
__√__ Kleynerman and Smith would own 49% of ACT after the sale

_____ ACT would continue to own the rights to the Patents
__√__ Grinberg and Glaser needed Smith to remain on at ACT after the Transaction because Grinburg and Glaser knew nothing about the security industry
_____ Profits would be split equally among all four members of ACT in a partnership format

If you placed a check mark next to any of the representations above then answer Question 5. If you made zero checkmarks, then answer Question 10.

Question 5:
Were any of the marked representations untrue?
                         Answer: NO
If you answered, yes, mark the untrue representation:
…
If you placed a check mark next to any of the representations in Questions 4 and answered Question 5 "yes," then answer Question 6. Otherwise, answer Question 10.

Question 6:
Did Kleynerman make the representations knowing the representations were untrue or having the present Intent not to perform the subject matter of the representations?
                         Answer:_____
If you placed a check mark next to any of the representations in Question 4 and answered Questions 5 and 6 "yes," then answer Question 7. Otherwise, answer Question 10.

Question 7:
Did Kleynerman make the representations with the Intent to deceive and induce Smith to act upon the representations?
                         Answer: _____
If you placed a check mark next to any of the representatlons in Questions 4 and answered Questions 5, 6 and 7 "yes," then answer Question 8. Otherwise, answer Question 10.

Question 8:
Did Smith believe such representations to be true and justifiably rely on the representations to his pecuniary damage?
                         Answer: _____
If you placed a check mark next to any of the representations In Questions 4 and answered Questions 5, 6, 7 and 8 "yes," then answer Question 9. Otherwise, answer Question 10.

Question 9:
What sum of money will fairly and reasonably compensate Smith for his loss?
                         Answer: $_____
Proceed to Question 10.

### III. Agency-Breach of Duties – Disclosure and Loyalty and Care

Question 10:
Did Kleynerman have a fiduciary duty to act in furtherance of Smith's interests as it related to the Transaction between ACT and Red Flag Cargo?

Answer: YES

If you answered Question 10 "yes," then answer Question 11. If you answered Question 10 "no," then answer Question 13.

Question 11:
Did Kleynerman breach his duty to act in furtherance of Smith's interests as it related to the Transaction?

Answer: YES

If you answered Question 11 "yes," then answer Question 12. If you answered Question 11 "no," then answer Question 13.

Question 12:
What sum of money, if any, will fairly compensate Smith for Kleynerman's breach of duty to act in furtherance of Smith's interests as related to the Transaction?

Answer: $499,000

…

In this adversary proceeding, Smith argues that Kleynerman's judgment debt to Smith is one for money based upon a breach of fiduciary duty and should be excepted from discharge as a result of fraud or defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. §523(a)(4).

Kleynerman's Motions *in Limine* seek to estop Smith from re-litigating the issue of his mental competence and the issue of whether Kleynerman made any intentional misrepresentations in connection with the 2009 transaction at issue. Smith objects to both requests, claiming that the necessary elements of issue preclusion are not all met, because: (1) the standards of defining a fiduciary relationship differ between the circuit court action and the nondischargeability claim; and, (2) the issue of the totality of any representations or misrepresentations has not been fully litigated. Neither party has addressed whether it would be fundamentally unfair for the Court to apply issue preclusion to one or both of these issues, as they rely on inapt precedent for the inquiry.

*Mental Incompetence*. Kleynerman asserts that Smith is arguing that Kleynerman was acting in a fiduciary capacity to Smith in connection with the 2009 transaction and the state court jury finding precludes Smith from trying

to establish that Kleynerman's alleged fiduciary capacity arose from or was related to Smith's mental incompetence or mental deficiencies. More specifically, Kleynerman would like to preclude evidence that Smith was supposedly incompetent, claiming that this is the precise issue involved in the state court case, where litigation of the mental competence issue accounted for the majority of the 5-day trial. According to the Kleynerman, Smith made his alleged mental incompetence the primary focus of the state case, presenting five witnesses called to testify about his mental condition and capacity at the time he was negotiating the transaction documents at issue in the case; moreover, Smith testified extensively in that regard as well. The jury answered "No" when asked whether Smith was mentally incompetent when he signed the documents; consequently, according to Kleynerman, Smith is now precluded from attempting to establish that Kleynerman's alleged fiduciary capacity arose from or was related to Smith's mental incompetence or deficiencies.

Smith appears to acknowledge that mental competence was litigated and discussed in the state court action but argues that in this bankruptcy proceeding he may assert a basis for establishing the existence of fiduciary capacity or relationship based upon Kleynerman holding a difference in knowledge or power, whereas the state court basis of the fiduciary duty was Kleynerman's status as a corporate officer. The only portion of the state trial court record provided to this Court is the special verdict form, and the Court of Appeals decision.

The Court finds that the issue of Smith's mental competence during the relevant time period was actually litigated and determined by a valid final judgment. The parties agreed to the form of the verdict, wherein Question 1 asked whether Smith was mentally incompetent. The jury answered No. This determination was not upset on appeal. Moreover, the Court finds this issue was essential to the judgment, in that the answer No meant that the jury did not proceed to answer several later questions, and the claim for rescission based on mental incompetence was decided in favor of Kleynerman.

The next step for the Court's analysis is whether applying issue preclusion on the mental competence question comports with principles of fundamental fairness. The Court may consider (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of issue preclusion to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *In re Larsen*, 422 B.R. at 920, citing *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327 (1993).

Assessing these factors, the Court concludes, in its discretion, that it is not fundamentally unfair to estop Smith from presenting evidence on mental competence/incompetence. Smith could have sought review of this question as part of his cross-appeal, but elected not to do so. There do not appear to be intervening contextual shifts in the law, nor significant differences in the extensiveness of the state court and impending adversary proceeding that would warrant renewed presentation of the issue. Similarly, it is a fact question for which the burden of persuasion would be the same. Last, there are no compelling public policy interests or circumstances that make estoppel unfair on this issue. According to Kleynerman's motion, and not disputed by Smith, Smith devoted testimony of at least five witnesses in state court to the matter of his mental competence during the relevant time period. And, Smith was able to prevail in state court on his breach of fiduciary claim without a finding of mental incompetence.

*Misrepresentation.* Kleynerman also argues that the issue of whether he made any misrepresentations to Smith was fully litigated and decided by the

state court, when the jury found that of the six alleged misrepresentations, Kleynerman made only three of the representations, and none of them was untrue, such that Kleynerman did not make any misrepresentations. The special verdict was affirmed on appeal.

According to Smith, Kleynerman only provides evidence of the litigation of six representations. Kleynerman provides no other evidence or information that encompasses other possible representations made during the period at issue. Consequently, Smith asserts that he should not be barred from offering testimony or evidence in support of the allegations that Kleynerman's breach of duty arose from, among other things, alleged misrepresentation, and thus the issue of the totality of any representations or misrepresentations made between Smith and Kleynerman has not been fully litigated.

The Court finds that the issue of whether Kleynerman made the six statements or representations set out in verdict Question 4 was actually litigated and determined by a valid final judgment (and appeal). The verdict form was agreed to by the parties, the jury deliberated and answered that three of the representations specified in Question 4 were made, and three were not. In Question 5, the jury determined that the three specified representations made were not untrue. Accordingly, the jury did not award Smith any compensatory damages for intentional misrepresentation. Smith cross-appealed the verdict answer as to Question 4, but he did not succeed. The Court finds that the issue of whether Kleynerman made the six statements or representations set out in verdict Question 4 was essential to the judgment, and therefore is conclusive in this action.

As to the fundamental fairness part of the inquiry, the Court finds that it is not fundamentally unfair to preclude Smith from offering evidence on the issue of these six specified representations. As already noted, Smith obtained appellate review on the question, there are not or will not be significant shifts in the law or extensiveness of the proceedings, and the burdens of persuasion have not changed. There is no identifiable public policy interest in allowing Smith to re-try whether those specific statements were made or untrue, as the

circuit court trial was a full airing, and intentional misrepresentation was one of three theories of recovery Smith pursued before the jury.

To the extent Kleynerman's motion (or reply brief) seeks to estop Smith from offering, at the trial in this adversary proceeding, any other representations purportedly made by Kleynerman to Smith as a basis for the section 523(a)(4) fraud and defalcation claim, this decision will not bar Smith. This decision only applies issue preclusion to those issues of fact or law actually litigated, *i.e.*, the six specified representations listed in Question 4 of the verdict. The particularity of fraud pleading applies to all three aspects of the fraud discharge exception, including sec. 523(a)(4). *In re Eisaman*, 387 B.R. 219, 221 (Bankr. N.D. Ind. 2008). If Kleynerman's request were read to preclude unidentified representations beyond those six, it would veer into a request for claim preclusion (or *res judicata*), which is not permissible in a bankruptcy adversary proceeding.[1] *Brown v. Felsen*, 442, U.S. 127, 138-39 (1979), cited by *In re Pulvermacher*, 567 B.R. 881, 886-87 (explaining that claim preclusion ensures the finality of decisions, and under claim preclusion, a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings). Smith is not seeking an exception to discharge based on 11 U.S.C. section 523(a)(2)A(). If there are other statements that support his 523(a)(4) claim, he may raise them.

Dated: March 8, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[1] Kleynerman's reply brief cites a portion of *Matrix IV, Incorporated v. American Nat'l Bank and Trust Co. of Chgo.*, 649 F.3d 539(2011) that discusses "well-established claim preclusion doctrine." CM-ECF, Doc. 17-1, p.3.